Bonner C. Walsh (9646)
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Phone: (541) 359-2827
Facsimile: (866) 503-8206
Email: bonner@walshpllc.com

[*Additional counsel on signature page*]

*Attorney for Plaintiffs Miles and Melissa Black and the Putative Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

**MILES BLACK** and **MELISSA BLACK**, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

**IEC GROUP INC., d/b/a AMERIBEN**,

Defendant.

CASE NO. 1:23-cv-00384-AKB

**PLAINTIFFS' RESPONSE TO DEFENDANT IEC GROUP INC. D/B/A AMERIBEN'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT [DKT. 24]**

**TABLE OF CONTENTS**


I. Introduction....1

II. Factual Background....2

III. Legal Standard....3

IV. Argument....4

A. Plaintiffs Have Article III Standing....4

1. Plaintiffs allege a present injury as well as a "certainly impending" injury and "substantial risk of harm"....4

2. Plaintiffs incurred costs to mitigate the risk of harm....9

B. Plaintiffs' State Law Claims Are Not Preempted by ERISA....9

1. Plaintiffs' state law claims do not "relate to" the ERISA plan....9

2. Plaintiffs' state law claims are not preempted under *Davila*....11

3. Plaintiffs' state law claims may be pleaded in the alternative....12

C. Plaintiffs' Tort Claims Are Not Barred by the Economic Loss Doctrine....13

1. The Economic Loss Doctrine does not apply....13

2. Plaintiffs do not allege strictly economic losses....14

3. Plaintiffs' special relationship with the Defendant provides an exception to the Economic Loss Doctrine....14

D. Plaintiffs State a Claim for Negligence....15

1. Plaintiffs have alleged a duty owed....15

2. Defendant breached applicable duties of care....17

E. Plaintiffs State a Claim for Negligence *Per Se*....18

F. Plaintiffs State a Claim for Breach of Contract....20

G. Plaintiffs State a Claim for Breach of Implied Contract....21

H. Plaintiffs State a Claim for Breach of Fiduciary Duty....................22

I. Plaintiffs State a Claim for Unjust Enrichment....................23

J. Plaintiffs State a Claim for Defendant's Violation of the Florida Deceptive and Unfair Trade Practices Act....................24

V. Conclusion....................25

## TABLE OF AUTHORITIES

**Cases**

*Aardema v. U.S. Dairy Sys., Inc.*,
147 Idaho 785, 215 P.3d 505 (Idaho 2009) ....................14

*Abraham v. Norcal Waste Sys., Inc.*,
265 F.3d 811 (9th Cir. 2001) ....................10

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ....................11

*Aholelei v. Dep't of Pub. Safety*,
488 F.3d 1144 (9th Cir. 2007) ....................12

*Alessi v. Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981) ....................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) ....................8

*Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*,
No. 10-23869-CIV, 2012 WL 1570057 (S.D. Fla. May 2, 2012) ....................25

*Bass v. Facebook, Inc.*
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................14, 16, 17

*Bedke v. Ellsworth*,
480 P.3d 121 (Idaho 2021) ....................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................3

*Bettwieser v. N.Y. Irrigation Dist.*,
297 P.3d 1134 (Idaho 2013) ....................21

*Bureerong v. Uvawas*,
959 F. Supp. 1231 (C.D. Cal. 1997) ....................19

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ....................5

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ....................................................................4, 5, 6, 7, 9

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) ....................................................................8

*Colafranceschi v. Briley*,
355 P.3d 1261 (Idaho 2015)....................................................................21

*Crusader Ins. Co. v. Scottsdale Ins. Co.*,
54 Cal. App. 4th 121 (1997) ....................................................................18

*Dearing v. Magellan Health Inc.*,
No. CV-20-00747-PHX-SPL, 2020 WL 7041059 (2020) ....................................8

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) ....................................................................14

*Dishman v. UNUM Life Ins. Co. of Am.*,
269 F.3d 974 (9th Cir. 2001) ....................................................................11

*Duran v. Cisco Systems, Inc.*,
No. CV 08-3337 CAS (JTLx), 2008 WL 4793486 (C.D. Cal. 2008)....................12

*Country Cove Dev., Inc. v. May*,
150 P.3d 288 (Idaho 2006)....................................................................23

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) ....................................................................3

*Flagstaff Affordable Hous. Ltd. P'Ship v. Design All., Inc.*,
223 P.3d 664 (Ariz. 2010)....................................................................13

*Flores Mendez v. Zoosk, Inc.*,
No. C 2004929 WHA, 2021 WL 308543(N.D. Cal. Jan. 30, 2021)....................17, 18

*Gardner v. Hollifield*,
533 P.2d 730 (Idaho 1975)....................................................................21

*High Valley Concrete, L.L.C. v. Sargent*,
234 P.3d 747 (Idaho 2010)....................................................................23

*Hixon v. Allphin*,
281 P.2d 1042 (Idaho 1955)....................................................................24

*Huynh v. Quora, Inc.*,
No. 18-cv-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ....................................17

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................................................................................8

*ILWU-PMA Welfare Plan Bd. of Tr. v. Connecticut Gen. Life Ins. Co.*,
No. C 15-02965 WHA, 2015 WL 9300519 (N.D. Cal. Dec. 22, 2015) ....................................13

*In re Adobe Systems, Inc. Privacy Litig.*,
No. 13-cv-05226-LHK, 2014 WL 4379916 (N.D. Cal. Sept. 4, 2014) .......................................5

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ....................................................................................14

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
362 F. Supp. 3d 1295 (N.D. Ga. 2019) ....................................................................................16

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................................7

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal 2020) ........................................................................................20

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
No. 19-MD-2879, 2020 WL 6290670 (D. Md. Oct. 27, 2020) ..................................................17

*In re: Premera Blue Cross Customer Data Sec. Breach Litig.*,
No. 3:15-MD-2633-SI, 2017 WL 539578 (D. Or. Feb. 9, 2017) ...............................................11

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284, 2020 WL 2214152 (S.D. Cal. 2020) ................................................14, 22

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) ....................................................................................5, 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...................................17

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018)
*cert. denied* 139 S. Ct. 1373 (2019) ..........................................................................................6

*In re James V. Grago, Jr.*,
No. 172-3003, 2019 WL 1932140 (F.T.C. Apr. 24, 2019) ........................................................17

*Jones v. Kootenai Cnty. Title Ins. Co.*,
873 P.2d 861 (Idaho 1994)....................23

*Krottner v. Starbucks Corp.*,
628 F.3d 1139 (9th Cir. 2010) ....................4, 5, 6, 7

*Kwikset v. Superior Court*,
4 Cal.5th 607 (2018) ....................16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................4

*Metro. Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987)....................9

*Meyer v. Christie*,
No. 07-2230-JWL, 2007 WL 3120695 (D. Kan. Oct. 24, 2007) ....................20

*Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., State of Fla.*,
761 So. 2d 1256 (Fla. Ct. App. 2000)....................24, 25

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) ....................5

*Northstar Fin. Advisors Inc. v. Schwab Investments*,
779 F.3d 1036 (9th Cir. 2015) ....................21

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co*.,
514 U.S. 645 (1995)....................9

*O'Dell v. Basabe*,
810 P.2d 1082 (Idaho 1991)....................20

*Oswald v. Costco Wholesale Corp.*,
473 P.3d 809 (Idaho 2020)....................15

*Peralta v. Hispanic Bus., Inc.*,
419 F.3d 1064 (9th Cir. 2005) ....................10

*Podolan v. Idaho Legal Aid Servs., Inc.*,
854 P.2d 280 (Idaho Ct. App. 1993)....................22

*Providence Health Plan v. McDowell*,
385 F.3d 1168 (9th Cir. 2004) ....................9

*Shay v. Apple Inc.*,
20CV1629-GPC(BLM), 2021 WL 75690 (S.D. Cal. Jan. 8, 2021)....................3

*Sierra—Bay Fed. Land Bank Ass'n. v. Superior Court*,
227 Cal. App. 3d 318 (1991)....................19

*Stearns v. Williams*,
240 P.2d 833 (Idaho 1952)....................23

*Suitts v. First Sec. Bank of Idaho, N.A.*,
713 P.2d 1374 (1985)....................20

*Susan B. Anthony List v. Driehaus*,
134 S. Ct. 2334 (2014)....................5

*Taylor v. Maile*,
127 P.3d 156 (Idaho 2005)....................21

*Thomas v. Thomas*,
249 P.3d 829 (Idaho 2011)....................21

*Thompson v. Pike*,
838 P.2d 293 (Idaho 1992)....................21

*Tinoco v. San Diego Gas & Elec. Co.*,
No. 17-cv-2433-BAS-JLB, 2018 WL 4562479 (S.D. Cal. Sept. 21, 2018)....................19

*Trans Union, LLC v. Ramirez*,
141 S. Ct. 2190 (2021)....................7

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021)....................8

*Turpen v. Granieri*,
985 P.2d 669 (Idaho 1999)....................15

*United Healthcare Servs. Inc. v. Advanced Reimbursement Sol'ns LLC*,
No. CV-21-01302-PHX-DLR (CDB), 2022 WL 4783771 (D. Ariz Sept. 30, 2022)....................13

*Valentin-Munoz v. Island Fin. Corp.*,
364 F. Supp. 2d 131 (D.P.R. 2005)....................10

*Watkins Co., LLC v. Storms*,
272 P.3d 503 (Idaho 2012)....................20

*Wolford v. Tankersley*,
695 P.2d 1201 (Idaho 1985)....................24

**<u>Statutes, Regulations, and Rules</u>**

15 U.S.C. § 45....................19

29 U.S.C. § 1132(a)(1)(B)....................10

29 U.S.C. § 1144(a)....................9, 11

Fed. R. Civ. P. 8....................12

Fed. R. Civ. P. 12(b)(6)....................21

Fla. Stat. § 501.201, *et seq*.....................25

**<u>Treatises</u>**

65 C.J.S. Negligence § 56 (2015)....................14

Restatement (Second) of Torts § 874 cmt. a (1979).................... 22

## I. INTRODUCTION

On December 6, 2022, an employee of Defendant IEC Group, Inc. d/b/a AmeriBen ("AmeriBen") sent an Excel spreadsheet to unknown persons which contained Plaintiffs' and Class Members' healthcare information, including but not limited to, names, unique tracking numbers, provider names, claim numbers, dates of service, and amount billed/paid ("PII/PHI") (the "Data Breach"). AmeriBen failed to notify Plaintiffs for 8 months—until August 14, 2023.

In its motion to dismiss, AmeriBen contends that Plaintiffs lack Article III standing, but Plaintiffs' allegations establish their standing under both Ninth Circuit and Supreme Court precedent. AmeriBen further contends that Plaintiffs' state law claims are preempted by ERISA and also moves to dismiss each of Plaintiffs' claims. As discussed below, Plaintiffs' state law claims are not preempted by ERISA and Plaintiffs have adequately pled their claims for negligence, negligence *per se*, breach of contract, breach of implied contract, breach of fiduciary duty, unjust enrichment, and for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). AmeriBen's Motion to Dismiss ("Motion") lacks merit or revolves around factual issues that cannot be resolved on a motion to dismiss. As such, the Motion should be denied.

## II. FACTUAL BACKGROUND

AmeriBen is a third-party administrator of employer sponsored benefit plans. In providing its services, AmeriBen collects PII/PHI, including names, email addresses, usernames, passwords, social security numbers, phone numbers, mailing addresses, financial information, employment information, drivers' license information, insurance information, marital status, and other personal and highly sensitive personal information a person is required to provide when enrolling and using benefits of an employer sponsored benefit plan. *See* Complaint ("Compl.") ¶¶ 9, 22.

On or about August 14, 2023, AmeriBen issued a letter to Plaintiffs and Class Members to inform them that in December 2022, an AmeriBen associate exposed their PII/PHI to unauthorized access and misuse. Allegedly, the PII/PHI included names, employer's names, unique tracking numbers, healthcare provider names, claim numbers, dates of service, and the amount billed or paid. Compl. ¶¶ 12, 25-26. The number of impacted consumers is not currently known. Compl. ¶ 21. According to the Department of Health and Human Services' online portal, available at https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf, Defendant reported on August 14, 2023 that 74,884 persons were impacted by the Data Breach.

The letter instructed Plaintiffs and Class Members to contact AmeriBen as soon as possible if "you notice anything in your health records or explanation of benefits (EBOs) that doesn't look right." Compl. ¶ 27. The letter advised Plaintiffs and Class Members to "monitor [their] credit reports," and that they had the right to obtain "one free credit report annually from each of the three major credit reporting bureaus." Compl. ¶ 29. AmeriBen also advised Plaintiffs and Class Members to obtain a fraud alert or credit freeze on their credit reports. Compl. ¶¶ 88, 100.

As a direct result of the Data Breach, Plaintiffs Melissa Black ("Mrs. Black") and Miles Black ("Mr. Black") spent time and energy responding to the Data Breach, including two hours each reviewing bank accounts and statements and additional time changing passwords related to their personal accounts. Compl. ¶¶ 89. 101. Plaintiffs also experienced spam texts, calls, and emails. Compl. ¶¶ 90, 102. Plaintiffs will continue to have to devote time and energy to monitor and protect their identity and financial accounts, and will continue to suffer anxiety, emotional distress, and the loss of their privacy. Compl. ¶¶ 91-92, 103-104.

Now that Plaintiffs' and Class Members' PII/PHI has been exposed as a result of AmeriBen's deficient security measures, they will continue to be at substantial risk for further

imminent and future harm. Compl. ¶ 72. Fraudulent activity might not show up for prolonged periods of time—potentially years after the PII and PHI are divulged to unauthorized third parties. Compl. ¶ 74. Approximately 21% of victims do not become aware that their identity has been compromised until more than two years after it has happened. Compl. ¶ 75. Healthcare-related data is among the most sensitive and personally consequential when compromised. Compl. ¶ 76. 40% of consumers are unaware that they are even a victim of medical identity theft until after the damage has already been done. Compl. ¶ 75. When faced with such an unsettling predicament, a majority of the victims are forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage. Compl. ¶ 76. Because of Defendant's unlawful conduct that caused the Data Breach, Plaintiffs and Class Members will continue to be at risk.

## III. LEGAL STANDARD

A complaint is not required to include "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim." *Shay v. Apple Inc.*, 20CV1629-GPC(BLM), 2021 WL 75690, at *3 (S.D. Cal. Jan. 8, 2021). The court must accept "[a]ll well-pleaded allegations of material fact in the complaint" as true and construe them "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ARGUMENT

### A. Plaintiffs Have Article III Standing

#### 1. Plaintiffs allege a present injury as well as a "certainly impending" injury and "substantial risk" of harm

To meet the "irreducible constitutional minimum" of standing, a plaintiff must have suffered an "injury in fact," which is an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent" as opposed to "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). The injury must be causally connected to the defendant's unlawful conduct. *Id*. Finally, it must be "likely, as opposed to merely speculative," that a favorable decision will redress the injury. *Id*. at 561.

Plaintiffs' allegations are more than sufficient to establish standing. Plaintiffs' allegations demonstrate present, as well as concrete and imminent, injury because they have forever lost control of their highly sensitive information including their full names, unique tracking numbers, healthcare provider information, claim numbers, and financial information related to their medical care. Under binding Ninth Circuit precedent, Plaintiffs and Class Members have suffered harm, and will continue to do so far into the future.

In *Krottner v. Starbucks Corp*., the Ninth Circuit held that a credible threat of immediate harm satisfies Article III's injury-in-fact requirement. 628 F.3d 1139, 1143 (9th Cir. 2010). In *Krottner*, the plaintiffs were employees whose names, addresses, and social security numbers were stored on a stolen laptop. *Id*. at 1140. The court found that although the plaintiffs' personal information had not been misused, they had suffered an injury-in-fact due to the theft of their unencrypted personal information. *Id*. at 1143.

Here, Defendant argues that Plaintiffs lack standing to maintain this lawsuit because they have not alleged any concrete injury-in-fact. Defendant further cites to *Clapper* in stating that

Plaintiffs' alleged risk of future harm that *may* arise in the event their information is accessed rests on an "attenuated chain of inferences necessary to find harm." However, in *Clapper*, the Court's findings were specific to the "especially rigorous" standing inquiry for constitutional challenges to executive power, *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1147 (2013). Furthermore, the Supreme Court reaffirmed that its decisions do not uniformly require plaintiffs to demonstrate with certainty that the harms they identify will come about. *Id.* at 1150 n. 5. In fact, standing may be based on a "substantial risk" that the harm will occur, which could inevitably cause plaintiffs to incur costs to mitigate or avoid that harm. *Id.*; *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) ("[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur").

The Ninth Circuit's standard was based on binding Supreme Court precedent. *See Krottner*, 628 F.3d at 1142-43 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also In re Sony Gaming Networks & Customer Data Security Breach Litig*., 996 F. Supp. 2d 942, 961 (S.D. Cal. 2014) ("*Clapper* did not set forth a new Article III framework, nor did the Supreme Court's decision overrule previous precedent requiring that the harm be 'real and immediate.'"). While the Ninth Circuit may have phrased the standard slightly differently than the Supreme Court did in *Clapper*, a "credible threat of real and immediate harm" is substantially the same as a "certainly impending" injury or "substantial risk" of harm. *See In re Adobe Systems, Inc. Privacy Litig.*, No. 13-cv-05226-LHK, 2014 WL 4379916, at *8 (N.D. Cal. Sept. 4, 2014) ("The Court does not find that *Krottner* and *Clapper* are clearly irreconcilable. ... [The] difference in wording is not substantial."). As such, Ninth Circuit Courts are bound by *Krottner*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*) ("[D]istrict courts should consider themselves bound by [] intervening higher authority and reject the prior opinion of this court as having been

effectively overruled" only when the intervening higher authority is "clearly irreconcilable with our prior circuit authority."); *see also In re Zappos.com, Inc.*, 888 F.3d 1020, 1026 (9th Cir. 2018), *cert. denied* 139 S. Ct. 1373 (2019) (*Krottner's* credible threat of real and immediate harm standard remains good law).

Plaintiffs' allegations satisfy *Clapper's* "certainly impending" or "substantial risk" of harm standard. Plaintiffs alleged that Defendant shared their PII/PHI with an unknown number (perhaps tens of thousands) of unknown third parties (whose email addresses were accessible by any number of additionally unknown persons) without their knowledge. Compl. ¶¶ 85, 97. Each of the Plaintiffs allege that their highly sensitive and confidential PII/PHI was exposed in the Data Breach, including at least their full names, unique tracking numbers, provider names, claim numbers, and dates of service. Compl. ¶¶ 87, 99. Each of the Plaintiffs alleged that they experienced spam texts, calls and/or emails since the Data Breach. Compl. ¶¶ 90, 102. "These alleged attacks further support Plaintiffs' contention that [bad actors] accessed information that could be used to help commit identity fraud or identity theft." *Zappos*, 888 F.3d at 1028. Plaintiffs further alleged that despite receiving notification of the Data Breach on August 14, 2023, the confidentiality of their PII/PHI had been breached since December 2022 which left them completely vulnerable to identity theft and fraud for eight months. Compl. ¶ 25. Plaintiffs' risk of harm is nothing like the "highly attenuated chain of possibilities" that would have had to occur in *Clapper* before the plaintiffs ever suffered any harm. *Clapper*, 133 S. Ct. at 1148-49. The harm Plaintiffs face in this case is far from hypothetical. It is present and real.

In *Adobe*, the court found that the plaintiffs satisfied Article III standing where the plaintiffs alleged that hackers stole replaceable credit and debit card data from Adobe's servers but did not allege that their PII had been misused. The court noted that "[t]he threatened injury here could be

more imminent only if Plaintiffs could allege that their stolen personal information had already been misused," but that "to require Plaintiffs to wait until they actually suffer identity theft or credit card fraud in order to have standing would run counter to the well-established principle that harm need not have already occurred or be 'literally certain' in order to constitute injury-in-fact." *Adobe*, 2014 WL 4379916, at *8. Similarly, in *In re Sony Gaming Networks*, the court held that the theft of credit and debit card data satisfied *Clapper's* "certainly impending" standard. *Sony*, 996 F. Supp. 2d at 962 ("Plaintiffs' allegations that their Personal Information was collected by Sony and then wrongfully disclosed as a result of the intrusion [are] sufficient to establish Article III standing at this stage in the proceedings."). The court found "both *Clapper* and *Krottner* controlling, and case law in the circuit analyzing the 'injury-in-fact' requirement following *Krottner* highly persuasive." *Id*. at 961-62 (citing cases).

Courts in the Ninth Circuit have concluded that the unauthorized dissemination of sensitive information to third parties alone satisfies the injury in fact element of standing. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019); *see also Trans Union, LLC v. Ramirez*, 141 S. Ct. 2190, 2204–05 (2021) (disclosure of private information is a concrete intangible harm providing a basis for a lawsuit).

Defendant asks this Court to require Plaintiffs to show "more" to establish injury-in-fact, minimizing the Plaintiffs' time spent reviewing accounts, sifting through unwanted text messages and email spam, and their own subjective fear/anxiety after learning that for eight months their PHI/PII was in the hands of potentially tens of thousands of unknown people, who had access to confidential and sensitive information that could lead to identity theft and also identify Plaintiffs' health conditions, medications, and treatments.

Defendant further relies on *Dearing* to make the assertion that Plaintiffs must prove their data was actually stolen to suggest that it will be misused. *Dearing v. Magellan Health Inc*., No. CV-20-00747-PHX-SPL, 2020 WL 7041059, at *2. Federal courts have addressed the issue of "more" and found that when courts hold that a data breach, "without more," does not establish imminent risk of identity theft or fraud, it is typically because some important personal information was missing from the data breach. *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021) (holding allegation that hackers *may* get access to credit card data, without social security number <u>*or*</u> date of birth, did not establish imminent risk of identity theft) (emphasis added); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1053 (N.D. Cal. 2022) (declaring usernames and passwords, without more—"such as first and last names"—may not lead to fraud). However, when a data breach *does* include significant personally identifiable information, such as in this case, courts recognize a substantial risk that establishes standing. *Attias v. Carefirst*, Inc., 865 F.3d 620, 628 (D.C. Cir. 2017) (holding breach of names, birth dates, email addresses and subscriber identification number "does present a substantial risk of imminent and future harm."); *Clemens v. ExecuPharm Inc*., 48 F.4th 146, 159 (3d Cir. 2022) (concluding that "[t]he nature of the information—a combination of personal and financial data—is the type that can be used to perpetrate identity theft or fraud."). AmeriBen's

Data Breach was not "without more." The nature of the information—a combination of Plaintiffs' and Class Members' names with unique medical and financial data—can be used to fraudulently impersonate Plaintiffs, and was publicly disclosed to unauthorized persons. As such, the Data Breach created a substantial risk of identity fraud. *Attias*, 865 F.3d at 628.

**2. Plaintiffs incurred costs to mitigate the risk of harm**

Plaintiffs allege that they have spent, and will continue to spend, considerable time and money to mitigate the risk of identity theft by monitoring bank statements, other financial accounts, and changing passwords. Compl. ¶¶ 89, 92, 101, 104. Unlike the costs the plaintiffs incurred in *Clapper*—which the Supreme Court found were incurred to "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," *Clapper*, 133 S. Ct. at 1151—here, Plaintiffs' costs were reasonably incurred to mitigate or avoid the substantial risk of harm. *Id*. at 1150 n.5; *see also Adobe*, 2014 WL 4379916, at *9 ("As the Court has found that all Plaintiffs adequately alleged that they face a certainly impending future harm from the theft of their personal data, ... the Court finds that the costs Plaintiffs ... incurred to mitigate this future harm constitute an additional injury-in-fact.").

**B. Plaintiffs' State Law Claims are Not Preempted by ERISA**

**1. Plaintiffs' state law claims do not "relate to" the ERISA plan**

29 U.S.C. § 1144(a) states that ERISA "shall supersede any and all state laws insofar as they . . . relate to any employee benefit plan." Whether a state or common law claim "relates to" an employee benefit plan is the critical issue in any preemption analysis. Common law or state claims "relate to" an employee benefit plan governed by ERISA if they have (1) a "connection with" or (2) "reference to" such a plan. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656 (1995). To determine whether a claim has a "connection with" an employee benefit plan, courts in the Ninth Circuit use a relationship test. *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-66 (1987)). The relationship test emphasizes the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a

participant. *Id*. (citing *Abraham v. Norcal Waste Sys., Inc*., 265 F.3d 811, 820-21 (9th Cir. 2001)). A claim has "reference to" an ERISA plan when the claim is premised on the existence of an ERISA plan and when the existence of the plan is essential to the claim's survival. *See id*. at 1172.

Not all state law claims "relate to" the employee benefit plans simply because of the presence of a provider and subscriber as parties. In *McDowell*, the Ninth Circuit held that because the plaintiff was attempting through contract law to enforce a reimbursement provision, it did not have the requisite "connection with" or "reference to" an ERISA plan for preemption to take place. *Id*. The plaintiff, an insurance company, claimed that the reimbursement contract between the insured and the company required reimbursement under the contract after defendants received a $500,000 settlement. The court held that, although the plaintiff was an ERISA entity, ERISA did not preempt the contract claim. The claim in that case did not "relate to" the plan "because adjudication of the claim required no interpretation of the plan, no distribution of benefits, and no dispute regarding any benefits previously paid." *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005) (citing *McDowell*, 385 F.3d at 1172); *see also* 29 U.S.C. § 1132(a)(1)(B); *see also Valentin-Munoz v. Island Fin. Corp*., 364 F. Supp. 2d 131, 135 (D.P.R. 2005) (holding that a claim for negligent and intentional infliction of emotional distress does not cause preemption where the claim was not seeking to recover benefits under the terms of the plan, enforce rights under the plan, or clarify future rights).

The state claims at issue here do not have "reference to" or a "connection with" an ERISA plan. Plaintiffs have not premised their claims on their ERISA plan. Additionally, nothing Plaintiffs stated in their Complaint gives reason to believe that the plan itself is essential to the claims. Plaintiffs' claims do not have a "connection with" an ERISA plan because there is no "genuine impact" on the ERISA relationship. Adjudication of the claims does not require

interpretation of the plan, distribution of benefits, or involve any dispute regarding any benefits previously paid. *See McDowell*, 385 F.3d at 1172. Thus, the state law claims do not "relate to" the ERISA plan and ERISA does not preempt Plaintiffs' claims.

**2. Plaintiffs' state law claims are not preempted under *Davila***

The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive preemption provisions, *see* 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc*., 451 U.S. 504, 523 (1981)). Defendant cites to *Davilla* in making the argument that Plaintiffs' state law claims are preempted by ERISA because Plaintiffs could have brought a claim for the challenged conduct under ERISA, and "the plan administrator's duties to the complaining party arise solely from the ERISA plan." *Id*. at 209. Even if the Court were to find a relationship between Plaintiffs' state law claims and their employee health insurance plan, Defendant's argument fails the second prong of *Davila*.

A mere relationship between alleged conduct and the administration of an ERISA plan does not warrant preemption. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 984 01 Cal. Daily Op. Serv. 8896, 2001 WL 1230658 (9th Cir. 2001). In *Dishman*, the United States Court of Appeals for the Ninth Circuit confidently held that the intent of Congress "was not to provide ERISA administrators with blanket immunity from garden variety torts." *Dishman* 269 F.3d at 984. There, the court noted that the claim of invasion of privacy still remained with or without receipt of a plan benefit, which showed the tangential nature of the plaintiff's claim and plan administration. An independent legal duty separate from an ERISA plan does not fall under ERISA's complete preemption. *In re: Premera Blue Cross Customer Data Sec. Breach Litig.*, No.

3:15-MD-2633-SI, 2017 WL 539578 (D. Or. Feb. 9, 2017). In fact, courts in the Ninth Circuit addressing claims stemming from data breaches caused by health insurers, such as *Premera*, find that the modest correlation between data security and an ERISA plan does not override the presumption against preempting state law. *Id*. at 22; *see also Duran v. Cisco Systems, Inc.*, No. CV 08-3337 CAS (JTLx), 2008 WL 4793486 (C.D. Cal. 2008) (court denied defendant's motion for dismissal stating that the plaintiff's breach of personal information was only "peripherally related to the administration of the [ERISA] plan").

Here, Plaintiffs' claims arise from a separate independent legal duty that was not related to payment or denial of ERISA plan benefits, choice of medical services and providers, or other traditional plan benefits. The Data Breach, as similarly held in *Premera,* is tangentially related to the ERISA benefit plan. AmeriBen had a separate legal duty to ensure the privacy of collected personal data and prevent its disclosure to unauthorized third parties. It is that independent duty which AmeriBen breached. As such, ERISA does not preempt Plaintiffs' claims.

**3. Plaintiffs' state law claims may be pleaded in the alternative**

Under Federal Rule of Civil Procedure 8, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2), (d)(3); *see also id*. at (a)(3) (requiring "a demand for the relief sought, which may include relief in the alternative or different types of relief"). As the Ninth Circuit has explained, "[p]leading in the alternative is not an unfair litigation tactic." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1149 (9th Cir. 2007). Rather, it is explicitly permitted under the Federal Rules. And nothing in ERISA appears to explicitly supersede or render inapplicable Rule 8. Courts have permitted alternatively-pled claims to proceed at the motion to dismiss stage even in the

context of ERISA, finding that Rule 8 protects plaintiffs from being "forced to hazard a guess" between alternative theories before discovery clarifies the relevant facts. *See, e.g.*, *ILWU-PMA Welfare Plan Bd. of Trustees v. Connecticut Gen. Life Ins. Co.*, No. C 15-02965 WHA, 2015 U.S. Dist. LEXIS 170832, 2015 WL 9300519, at *8 (N.D. Cal. Dec. 22, 2015). In *ILWU-PMA Welfare Plan of Trustees*, for example, the plaintiff brought causes of action for breach of fiduciary duties under ERISA, as well as for breach of contract and various other state law causes of action. *Id.* at *3. The court permitted the plaintiff to plead both ERISA and state law claims in the alternative because it was not clear at the motion to dismiss stage whether ERISA governed the conduct at issue. *Id.* at *8. Here too, a more fully-developed record is necessary to determine whether Defendant's conduct in failing to protect Plaintiffs' and Class Members' PII/PHI is governed by ERISA. As such, Plaintiffs' state law claims should not be dismissed.

### C. Plaintiffs' Tort Claims are Not Barred by the Economic Loss Doctrine

#### 1. The Economic Loss Doctrine does not apply

The Economic Loss Doctrine's ("ELD") principal function "is to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain." *United Healthcare Servs. v. Advanced Reimbursement Sols. LLC*, No. CV-21-01302-PHX-DLR (CDB), 2022 WL 4783771 *(quoting Flagstaff Affordable Hous. Ltd. P'Ship v. Design All., Inc.*, 223 P.3d 664, 671 (Ariz. 2010)). The ELD has no place in this case, where plaintiffs bought nothing from Defendant, have been forced to spend time trying to mitigate the effects of the Data Breach, and face a lifetime of insecurity due to the exposure of their PII/PHI. Defendant argues that Plaintiffs have not alleged facts of a mutually binding contract while simultaneously arguing that the ELD, which "restricts

contracting parties to contractual remedies," 65 C.J.S. Negligence § 56 (2015), bars Plaintiffs' tort claims. Defendant simply can't have it both ways.

### 2. Plaintiffs do not allege strictly economic losses

Plaintiffs' claims are not barred by the ELD because Plaintiffs do not allege strictly economic losses. Plaintiffs allege that they suffered lost time, anxiety, emotional distress, and loss of privacy. Compl. ¶¶ 89, 91-92, 101, 103-104. "[T]he value of one's own time needed to set things straight is a loss from an opportunity-cost perspective." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1034 2019 WL 2568799 (N.D. Cal. 2019) (quoting *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018)). Alleged lost time and anxiety as a harm are not economic losses. *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1295 2020 WL 2214152 (S.D. Cal. 2020) (lost time responding to the breach and increased anxiety are non-economic damages). Further, public disclosure of Plaintiffs' and Class Members' PII/PHI is not an economic injury. *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (holding that "[p]laintiffs have not alleged merely economic injury. Rather, they have alleged a privacy injury stemming from the unauthorized sharing of their private medical information."). Plaintiffs have plausibly alleged that they spent time responding to AmeriBen's Data Breach, and suffered a loss of privacy and anxiety resulting from the Data Breach. Compl. ¶¶ 89, 91-92, 101, 103-104 These are not economic damages.

### 3. Plaintiffs' special relationship with the Defendant provides an exception to the Economic Loss Doctrine

Even assuming the ELD applies, the exception for parties with a "special relationship" preserves Plaintiffs' claims. The Idaho Supreme Court defines a special relationship where the relationship between the parties is such that it would be equitable to impose such a duty. *Aardema v. U.S. Dairy Sys., Inc.*, 215 P.3d 505, 512 (Idaho 2009). There is a special relationship in two

situations: (1) "where a professional or quasi professional performs personal services"; and (2) "where an entity holds itself out to the public as having expertise regarding a specialized function, and by so doing, knowingly induces reliance on its performance of that function." *Id.* As the Idaho Supreme Court stated more recently, "the presence of a special relationship ordinarily depends on whether the defendant possessed a superior level of control or knowledge about the risk than the plaintiff." *Oswald v. Costco Wholesale Corp.*, 473 P.3d 809, 819 (Idaho 2020).

In this case, Defendant holds itself out to the public as an expert in providing efficient health and wellness plan administration to millions of members. Compl. ¶ 21. In providing its services, Defendant collects PII/PHI from its members including, but not limited to, names, social security numbers, mailing addresses, financial information, employment information, and medical information. Compl. ¶ 22. Plaintiffs and Class Members lost the ability to protect their PII/PHI when they entrusted this information to Defendant. By obtaining, collecting, and using Plaintiffs' and Class Members' PII and PHI, Defendant possessed a superior level of control in the protection of the PII/PHI from unauthorized disclosure. Thus, Defendant's special relationship is an exception to the ELD.

### D. Plaintiffs State a Claim for Negligence

#### 1. Plaintiffs have alleged a duty owed

Every person has a "duty to exercise ordinary care to 'prevent unreasonable, foreseeable risks of harm to others.'" *Turpen v. Granieri*, 985 P.2d 669, 672 (Idaho 1999). When determining whether a duty of care exists, courts consider "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the

consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Bass*, 394 F. Supp. 3d at 1039 (quoting *Kwikset v. Superior Court*, 4 Cal.5th 607, 628 (2018)). The *Bass* court stated:

> The lack of reasonable care in the handling of personal information can foreseeably harm the individuals providing the information. Further, some of the information here was private, and plaintiff plausibly placed trust in Facebook to employ appropriate data security. From a policy standpoint, to hold that Facebook has no duty of care here "would create perverse incentives for businesses who profit off the use of consumers' personal data to turn a blind eye and ignore known security risks."

*Id.* (quoting *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1325 (N.D. Ga. 2019)).

At a minimum, AmeriBen owed a duty to Plaintiffs and Class Members to take reasonable care in the handling of their private information. As a result of AmeriBen's failures and inactions, Plaintiffs and Class Members had their PII/PHI exposed and subject to unauthorized disclosure. This information can be used to commit identity theft and fraud and should be protected.

Immutable personal information like the information stolen in the Data Breach carries a higher risk of future harm. *Bass*, 394 F. Supp. 3d at 1034. It is not like a password that can be changed online in a matter of minutes. In *Bass*, the information at issue consisted of names, phone numbers or email addresses, as well as usernames, gender, dates of birth, and (if users had chosen to share it) workplace, education, relationship status, religious views, hometown, self-reported current city, website, the user's locale/language, the types of devices used to access Facebook, the last ten places the user "checked into" or was "tagged" on Facebook, the people or pages that the user "followed" on Facebook, and the user's fifteen most recent searches using the Facebook search bar. *Id.* at 1031. Similarly, here the detailed information concerning Plaintiffs' and Class

Members' personal identifying information and their healthcare plan information was for practical purposes immutable, and therefore highly valuable.

The risk of identity theft does not *only* flow from the theft of one's credit card information or a Social Security number. It also occurs when immutable pieces of data—such as dates of birth, answers to security questions, and demographic information—are stolen. *See Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2019 WL 11502875, at *5 (N.D. Cal. Dec. 19, 2019) (quoting *James V. Grago, Jr.*, No. 172-3003, 2019 WL 1932140, at *4 (F.T.C. Apr. 24, 2019)); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (data breach exposing names, email addresses, telephone numbers, birth dates, passwords, and security questions). Such information provides "ammo" to commit future fraud. *Bass*, 395 F. Supp. 3d at 1035. It should therefore be protected.

**2. Defendant breached applicable duties of care**

The Complaint more than meets what is required to provide AmeriBen with reasonable notice and plausibly plead a breach of its duty of care. The burden on Plaintiffs in this regard is lenient, given that Plaintiffs are unable to investigate the Data Breach or learn anything about the Data Breach that AmeriBen does not want to be revealed until discovery is permitted. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 19-MD-2879, 2020 WL 6290670, at *23 (D. Md. Oct. 27, 2020) ("Plaintiffs do not need to particularize the discrete evidentiary details of every action that [defendant] took or failed to take at this stage in the case—their obligation is to plead a sufficient claim, not prove it as [defendant] apparently would have it.").

AmeriBen is in exclusive possession of all relevant information pertaining to this element. Were it otherwise, then state laws would not mandate that businesses like AmeriBen notify consumers when a data breach occurs. As the court reasoned in *Flores Mendez v. Zoosk, Inc.*, No.

C 2004929 WHA, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021), "the common law doctrine of *res ipsa loquitur* has some application" to data breaches because the ordinary consumer "has no clue what internet companies' security steps are" or "what security steps were actually in place." Here, as in *Flores*, "the breach would not have occurred but for inadequate security measures so it can be reasonably inferred at the pleadings stage." *Id.*

Nevertheless, AmeriBen's own statements allow Plaintiffs to plausibly allege specific instances in which AmeriBen breached its duty to safeguard Plaintiffs' and Class Members' personal and medical information. Specifically, AmeriBen failed to update and maintain adequate email filtering tools; failed to properly encrypt Plaintiffs' and Class Members' PII/PHI; failed to identify and respond to suspected or known security incidents; and failed to observe many other required measures explained in detail in paragraph 59 of the Complaint. Compl. ¶ 59(a)–(n).

Furthermore, the Complaint adequately alleges a breach of the duty to provide reasonable and timely notification of the Data Breach. AmeriBen waited from December 2022 until August 14, 2023 to provide notification of the Data Breach to impacted persons. Compl. ¶¶ 25-26. There could be no legitimate investigatory or law enforcement reason to keep impacted consumers, such as Plaintiffs and Class Members, in the dark for 8 months. No investigation into the incident relies on it remaining confidential or hidden from those whose personal information is exposed. AmeriBen should have notified Plaintiffs and Class Members expeditiously, but it failed to do so.

### E. Plaintiffs State a Claim for Negligence *Per Se*

Defendants argue that Plaintiffs' reliance on the doctrine of negligence *per se* fails because the FTC Act does not provide a private right of action. But Plaintiffs are not attempting to sue under this statute. Rather, the statutes "instead serve[] the subsidiary function of providing evidence of an element of a pre-existing common law cause of action." *Crusader Ins. Co. v.*

*Scottsdale Ins. Co*., 54 Cal. App. 4th 121, 125 (1997); *see Bureerong v. Uvawas*, 959 F. Supp. 1231, 1237 (C.D. Cal. 1997) ("The Court disagrees with Hub's broad and general contention that the Court may not recognize a negligence *per se* claim simply because the statute upon which the claim is based confers no private right of action."). In other words, "it is the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to recover civil damages . . . [T]he plaintiff is not attempting to pursue a private cause of action for violation of the statute; rather, he is pursuing a negligence action and is relying upon the violation of a statute, ordinance, or regulation to establish part of that cause of action." *Sierra—Bay Fed. Land Bank Ass'n. v. Superior Court*, 227 Cal. App. 3d 318, 333 (1991). Accordingly, Plaintiffs' negligence *per se* claim does not require a private right of action under the statute setting forth the applicable standard of care. "Because Plaintiffs' negligence cause of action may proceed, the Court does not dismiss the references to the negligence *per se* doctrine." *Tinoco v. San Diego Gas & Elec. Co.*, No. 17-cv-2433-BAS-JLB, 2018 WL 4562479, at *2 (S.D. Cal. Sept. 21, 2018).

Plaintiffs pled in clearly defined detail the standard of conduct for cybersecurity set forth by the Federal Trade Commission ("FTC") under its authority to regulate unfair and deceptive trade practices. 15 U.S.C. § 45. *See* Compl. ¶¶ 61, 147. Specifically, the FTC requires that businesses protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information while in storage; understand their network's vulnerabilities; and implement policies to correct any security problems. *Id.*

These rules are in place to prevent events like the Data Breach from happening. And, as persons whose information was being collected, stored and transmitted by AmeriBen, Plaintiffs and Class Members were the ones intended to benefit from these rules. The Complaint plausibly pleads how AmeriBen's conduct breached these common law and statutory duties, and

AmeriBen's breach proximately caused Plaintiffs' and Class Members' injuries that these duties were codified to prevent and redress.

**F. Plaintiffs State a Claim for Breach of Contract**

In Idaho, the elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages. *O'Dell v. Basabe*, 810 P.2d 1082, 1099 (Idaho 1991) (plaintiff has the burden of proving the existence of a contract and the fact of its breach); *Suitts v. First Sec. Bank of Idaho, N.A.*, 713 P.2d 1374, 1381 (Idaho 1985) (the damages recoverable must be caused by the breach); *Watkins Co., LLC v. Storms*, 272 P.3d 503, 511 (Idaho 2012) (the amount of damages must be proved).

Defendant argues that AmeriBen's Privacy Policy, which is not attached to the Complaint or quoted therein, is insufficient to create an enforceable obligation on behalf of Defendant. Specifically, Defendant argues that a Privacy Policy alone does not create a mutually binding agreement, and that AmeriBen's Privacy Policy is a generalized description of its privacy practices which essentially constitutes boilerplate language that does not account for consideration. That is wrong. Courts have recognized that privacy policies and similar privacy statements can constitute an enforceable express contract. *See*, e.g., *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 831 (N.D. Cal 2020) (finding that the "[Terms of Service] and the Privacy Policy are binding agreements"); *Meyer v. Christie*, No. 07-2230-JWL, 2007 WL 3120695, at *6 (D. Kan. Oct. 24, 2007) (rejecting defendant's motion to dismiss argument that a privacy policy could not constitute a contract between the parties).

By obtaining, collecting, and using Plaintiffs' and Class Members' PII and PHI, as part of its contractual obligations to administer Plaintiffs' and Class Members' employee health plan, there was a promise to protect Plaintiffs' and Class Members' PII/PHI. AmeriBen breached this

promise by failing to protect Plaintiffs' and Class Members' PII/PHI. As a result of the Data Breach, Plaintiffs and Class Members suffered damage to their privacy interests, and lost the benefit of their bargain when they made premium payments, a portion of which was for adequate and reasonable data security practices. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *14 (N.D. Cal. May 27, 2016).

**G. Plaintiffs State a Claim for Breach of Implied Contract**

Defendant argues that Plaintiffs cannot state a claim for breach of an implied contract because they have not alleged the existence of a contract. "An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and a lawful subject matter." *Northstar Fin. Advisors Inc. v. Schwab Investment*s, 779 F.3d 1036, 1050-51 (9th Cir. 2015) (citation omitted). Defendant argues that there was no mutual intent to form a binding agreement.

Whether mutual assent exists is a question of fact. *Thompson v. Pike*, 838 P.2d 293, 299 (Idaho 1992). Consequently, whether a contract has been formed is also a question of fact for the trier of fact to resolve. *Bettwieser v. N.Y. Irrigation Dist*., 297 P.3d 1134, 1140 (Idaho 2013) (quoting *Thomas v. Thomas*, 249 P.3d 829, 838 (Idaho 2011)). When considering a Rule 12(b)(6) motion, the Court must only look to the pleadings to determine whether a claim for relief has been stated. *Colafranceschi v. Briley*, 355 P.3d 1261, 1264 (Idaho 2015). Furthermore, the complaint must be viewed in the light most favorable to the plaintiff, and every doubt must be resolved in its favor. *Gardner v. Hollifield*, 533 P.2d 730, 731-32 (Idaho 1975). In other words, "[a] motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle the plaintiff to relief." *Bedke v. Ellsworth*, 480 P.3d 121, 128 (Idaho 2021) (quoting *Taylor v. Maile*, 127 P.3d 156, 160

(Idaho 2005)) (internal punctuation omitted). Because Plaintiffs have pled facts that allow the inference that an implied contract exists, the Court should not dismiss the claim.

Plaintiffs alleged that prior to the Data Breach, they took reasonable steps to maintain the confidentiality of their PII/PHI. Compl. ¶¶ 86, 98. For instance, Plaintiffs took care not to knowingly transmit unencrypted PII/PHI over the internet and further stored any documents containing their PII/PHI in a safe and secure location. Compl. ¶¶ 93, 94, 105, 106. A meeting of the minds occurred when Plaintiffs and Class Members agreed to provide their sensitive and personal information to Defendant in exchange for Defendant's agreement to protect their PII/PHI. Plaintiffs would not have provided their PII/PHI to AmeriBen had they known that the PII/PHI exchanged between them would not remain confidential and would be shared or disclosed to third parties. Compl. ¶ 176. Plaintiffs alleged that AmeriBen promised to safeguard Plaintiffs' and Class Members' PII/PHI in accordance with its privacy statement. AmeriBen's statements to the public (including Plaintiffs and Class Members) provide more than sufficient factual basis depicting a created expectation that AmeriBen would safeguard Plaintiffs' and Class Members' PII/PHI. AmeriBen breached its promises by failing to protect Plaintiffs' and Class Members' PII/PHI and causing the Data Breach. Plaintiffs therefore state a claim for breach of implied contract. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig*., 613 F. Supp. 3d 1284, 1297 (S.D. Cal. May 7, 2020)

### H. Plaintiffs State a Claim for Breach of Fiduciary Duty

A fiduciary relationship exists when one party is "under a duty to act or to give advice for the benefit of the other upon a matter within the scope of the relation." *Podolan v. Idaho Legal Aid Services, Inc*., 854 P.2d 280, 289 (Idaho Ct. App. 1993) (citing Restatement (Second) of Torts § 874 cmt. a (1979)). "Fiduciary relationships are commonly characterized by one party placing

property or authority in the hands of another, or being authorized to act on behalf of the other." *High Valley Concrete, L.L.C. v. Sargent*, 234 P.3d 747, 752 (Idaho 2010) (quoting *Country Cove Dev., Inc. v. May*, 150 P.3d 288, 296 (Idaho 2006)). A fiduciary relationship exists in cases where there has been a special confidence imposed in another who is bound to act in good faith and with due regard to the interest of one reposing the confidence. *Jones v. Kootenai County Title Ins. Co.*, 873 P.2d 861, 868 (Idaho 1994) (quoting *Stearns v. Williams*, 240 P.2d 833, 840-41 (Idaho 1952)). Thus, whether a fiduciary relationship exists depends upon the actual relationship of the parties.

Plaintiffs have alleged that AmeriBen, by serving as a health care plan administrator on behalf of Plaintiffs' employer, did in fact owe a fiduciary duty to Plaintiffs and Class Members. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII and PHI, Defendant assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII and PHI from disclosure. Compl. ¶ 23. Defendant's own instruction to Plaintiffs and Class Members in its data breach notification letters—to contact AmeriBen if "anything in your health records or explanation of benefits (EBOs) doesn't look right"—is an illustration of the trust and confidence that AmeriBen expected from its members to act on their behalf. Compl. ¶ 27. Therefore, Plaintiffs have alleged facts that state a valid claim for breach of fiduciary duty.

**I. Plaintiffs State a Claim for Unjust Enrichment**

Defendant next contends that Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs not only failed to adequately allege that AmeriBen incurred a benefit in administering Plaintiffs' and Class Members' employee health plans, but also because Plaintiffs' express contract with AmeriBen precludes a claim for unjust enrichment. Defendant again seeks to have it both ways by arguing that Plaintiffs have failed to allege the existence of a contract,

while simultaneously arguing that any claim for unjust enrichment is precluded by Plaintiffs' express contract with AmeriBen. Nevertheless, even where an agreement exists, unjust enrichment may be imposed. *Hixon v. Allphin*, 281 P.2d 1042 (Idaho 1955). The existence of an express agreement does not in and of itself signify that an action for unjust enrichment cannot be brought. Rather, only when the express agreement is found to be enforceable is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract. *Wolford v. Tankersley*, 695 P.2d 1201, 1203 (Idaho 1985). Because Defendant argues that the the parties do not have an express agreement, the Court should reject this argument as premature.

To address Defendant's argument that Plaintiffs failed to confer a benefit on AmeriBen, Plaintiffs allege that they provided AmeriBen with their sensitive PII/PHI. AmeriBen gained a benefit from Plaintiffs' PII/PHI by, among other things, using the PII/PHI to establish partnerships with network providers and vendors and for other business purposes. AmeriBen failed to use those benefits to provide proper data security to protect Plaintiffs' PII/PHI. Compl. ¶ 194. Under principles of equity, it would be unjust for AmeriBen to retain these benefits. Compl. ¶ 195.

### J. Plaintiffs State a Claim for Defendant's Violation of the Florida Deceptive and Unfair Trade Practices Act

Lastly, Defendant asserts that Plaintiffs' FDUTPA claim fails because Plaintiffs have not alleged any deceptive act or practice that occurred within Florida. In essence, Defendant contends the only connection to Florida is that Plaintiffs reside there. But "there are no geographical or residential restrictions contained in the express language of section 501.202 [of the FDUTPA]." *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1262 (Fla. Ct. App. 2000). In fact, the FDUTPA is intended "[t]o protect the consuming public and legitimate enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade

or commerce," Fla. Stat. § 501.202 (emphasis added); and "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale . . . or otherwise, of any good . . . *wherever situate*d." *Id.* § 501.203 (emphasis added). Thus, nothing on the face of the statute precludes its applicability to Defendant simply because evidence shows events relevant to the Data Breach occurred in Idaho. The crux of Plaintiffs' FDUTPA claim is that AmeriBen made various false representations concerning its security, fidelity, and ability to safeguard confidential information, and that these misrepresentations constitute an unfair trade practice under FDUTPA, §§ 501.201 *et seq*. The statute does not limit its protection to acts occurring exclusively in Florida. *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV, 2012 WL 1570057 (S.D. Fla. May 2, 2012). In *Barnext*, the court noted that although Florida's Third District Court of Appeal in *Millennium Communications* stated that violations of FDUTPA must have "transpired within the territorial boundaries" of the State, *see Millennium*, 761 So. 2d at 1262, there was nothing in the statute that limited relief to Florida consumers or situations where the conduct occurs *only* in Florida. *See Barnext*, 2012 WL 1570057, at *5-6 ("[T]he Court finds nothing in *Millennium* suggests that the FDUTPA applies only when conduct occurs entirely within Florida. To the contrary, *Millennium* highlighted the broad statutory language used in the FDUTPA.").

## V. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss should be denied, or Plaintiffs should be given leave to amend the Complaint, and for any other relief the Court deems just under the circumstances.

Dated: December 15, 2023

Respectfully submitted,

*/s/ Thomas A. Zimmerman, Jr.*

Bonner C. Walsh (9646)
**WALSH PLLC**

1561 Long Haul Road
Grangeville, ID 83530
Phone: (541) 359-2827
Facsimile: (866) 503-8206
Email: bonner@walshpllc.com

Marc E. Dann*
Brian D. Flick*
Marita I. Ramirez*
**DANNLAW**
15000 Madison Avenue
Lakewood, OH 44107
Phone: (216) 373-0539
Facsimile: (216) 373-0536
Email: notices@dannlaw.com

Thomas A. Zimmerman, Jr.*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, IL 60602
Phone: (312) 440-0020
Facsimile: (312) 440-4180
Email: firm@attorneyzim.com

**Admitted pro hac vice*

*Attorneys for Miles and Melissa Black and the Putative Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been furnished to counsel for Defendant, via email only as listed below, this 15th day of December, 2023:

Nicole C. Hancock at nicole.hancock@stoel.com
Kandi K. Hidde at khidde@fbtlaw.com
Darren A. Craig at dcraig@fbtlaw.com

By: *<u>/s/ Thomas A. Zimmerman, Jr.</u>*
Thomas A. Zimmerman, Jr.
*Pro Hac Vice*