Nicole C. Hancock, ISB No. 6899
*nicole.hancock@stoel.com*
Bradley Prowant, ISB No. 12335
*bradley.prowant@stoel.com*
STOEL RIVES LLP
101 S Capital Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000
Facsimile: 208.389.9040

Kandi K. Hidde, *pro hac vice*
*khidde@fbtlaw.com*
Darren A. Craig, *pro hac vice*
*dcraig@fbtlaw.com*
FROST BROWN TODD LLP
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244
Telephone: 317.237.3800
Facsimile: 317.237.3900

Attorneys for Defendants
IEC Group Inc., d/b/a Ameriben

**UNITED STATES DISTRICT COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| **MILES BLACK AND MELISSA BLACK**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**IEC GROUP INC., d/b/a AMERIBEN,**<br><br>Defendants. | Case No. 1:23-cv-00384-TWP-MG |

**DEFENDANT IEC GROUP INC., D/B/A AMERIBEN'S REPLY BRIEF IN SUPPORT OF <u>MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT</u>**

## INTRODUCTION

Plaintiffs' personal information was not hacked by criminal third parties intending to use it for financial gain. It was inadvertently included in a spreadsheet sent by a single Ameriben employee to plan members, like Plaintiffs themselves. There is no allegation the information included Plaintiffs' date of birth, passwords, Social Security Numbers, addresses, or credit card information. Nor have Plaintiffs alleged they have been the victim of any fraud or identity theft, or that the information has been misused in any way. These allegations thus do not describe an injury in fact required to establish Article III standing. Even if Plaintiffs could establish standing, their claims fail as a matter of law for many other reasons and should be dismissed.

## ARGUMENT

### I. Plaintiffs lack standing to assert their claims.

Plaintiffs' allegations fall short of establishing an actual injury. They have not alleged any fraud or identity theft; their data was not stolen by criminals; and the data disclosed did not include sensitive financial information. Even where some of these factors are present, courts have often found standing to be lacking. Plaintiffs have identified no court that has ever found a concrete injury-in-fact when, as here, ***none*** of these factors is present.

Plaintiffs allege three categories of "harm": (1) time spent reviewing accounts; (2) increased spam; and (3) the fear, anxiety, and stress associated with the potential for future identify theft. Courts have repeatedly found none of these establishes standing, absent additional facts demonstrating a credible and immediate risk of fraud or criminal identity theft. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022) (mitigation costs and emotional distress "can only qualify as concrete injuries in fact when they are based on a risk of harm that is either 'certainly impending' or 'substantial'" (citations omitted)); *Jackson v. Loews Hotels, Inc.*, No. ED

CV 18-827-DMG (JCx), 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) ("[R]eceiving spam or mass mail does not constitute an injury."); *Patterson v. Med. Rev. Inst. of Am.*, 2022 WL 2267673, at *2 (N.D. Cal. June 23, 2022) (holding plaintiff "cannot 'manufacture standing merely by inflicting harm on [themselves] based on [their] fear of hypothetical future harm that is not certainly impending.'" (citation omitted)).

The cases Plaintiffs cite in their Response are readily distinguishable. *Krottner v. Starbucks Corp.* involved the theft of a laptop containing "the unencrypted names, addresses, and social security numbers" of 97,000 Starbucks employees. 628 F.3d 1139, 1140, 1142-43 (9th Cir. 2010). In *In re Adobe Systems, Inc. Privacy Litigation*, "hackers deliberately targeted [the defendant's] servers" and stole "names, usernames, passwords, email addresses, phone numbers, mailing addresses, and credit card numbers and expiration dates," and some of the stolen data surfaced online. 66 F. Supp. 3d 1197, 1214-15 (N.D. Cal. 2014). Likewise, in *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, hackers stole names, addresses, birth dates, and credit/debit card information as part of a "criminal intrusion" into Sony's systems. 996 F. Supp. 2d 942, 953–55 (S.D. Cal. 2014). In each of these cases, courts found standing based on factual allegations that made the risk of concrete injury from identity theft real, immediate, and credible, as opposed to speculative.

Such facts are completely lacking here. There has been no "hack," outside intrusion into Ameriben's systems, or data breach at all. Nor is any sensitive information such as Social Security Numbers, debit/card numbers, passwords, or the like at risk. Plaintiffs' alleged risk of harm depends entirely on an inadvertent recipient of a spreadsheet "unfiltering" the spreadsheet, discovering Plaintiffs' names and claim information in it, and taking affirmative steps to somehow misuse it. (*See* Dkt. 1, ¶ 25.) Courts routinely dismiss claims based on similar allegations. *See In*

*re Facebook, Inc., Consumer Privacy Use Profile Litigation*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (risk of identity theft "too speculative" to confer standing when case did not involve "hackers" or "theft of . . . social security or credit card numbers"); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 24-25 (D.D.C. 2014).

While Plaintiffs' Response makes blanket reference to "unique medical and financial data" being "publicly disclosed to unauthorized persons" (Dkt. 33, p. 8), the allegations in their Complaint do not support this statement, and nowhere do Plaintiffs specify what was "publicly disclosed," how, or to whom. Plaintiffs' after-the-fact attempt to manufacture standing should be rejected and Plaintiffs' Complaint dismissed.

**II. ERISA preempts Plaintiffs' state-law claims.**

ERISA preempts "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Elkington v. Deseret Mut. Benefit Administrators Ins. Co.*, No. 4:20-cv-00317-CRK, 2021 WL 1840886, at *8 (D. Idaho May 7, 2021) (citation omitted). State-law claims are preempted if an individual could have brought a claim for the challenged conduct under ERISA, and "the plan administrator's duties to the complaining party arise solely from the ERISA plan." *Id.*

Here, Plaintiffs allege they entered into a contract by which "they were required to turn over their sensitive personal information to Ameriben in exchange for services," and that this contract "included promises by Ameriben to secure, safeguard, and not disclose [their] sensitive personal information." (Dkt. 1, ¶¶ 159–60.) The Plan under which Plaintiffs provided their information to Ameriben is an ERISA benefit plan maintained by their employer, CRH Americas, Inc., which Ameriben helped administer. (*See* Dkt. 24-2, 24-3.) Because Plaintiffs' claims arise from the administration of an ERISA plan and invoke obligations related to services performed

under that Plan, ERISA's civil-enforcement mechanism is Plaintiffs' sole avenue for relief. *In re Anthem, Inc.*, No. 15-CV-2874-LHK, 2015 WL 5286992, at *4 (N.D. Cal. Sept. 9, 2015).

Plaintiffs' repeated reliance on the FTC Act and HIPAA further proves that their claims arise from ERISA because any duties imposed by those statutes necessarily arise from Ameriben's administration of their ERISA plan. *See Doe v. Aetna Life Ins. Co.*, No. 6:18-cv-979-Orl-37GJK, 2018 WL 6829728, at *4 (M.D. Fla. Dec. 27, 2018).

Plaintiffs contend that they "have not premised their claims on their ERISA plan" and deny that the Plan itself is "essential" to their claims (Dkt. 33, p. 10), ignoring that the administration of the Plan is the only reason Ameriben was in possession of their PHI/PII in the first place. Any analysis of the obligations of Ameriben with respect to this data would require construction of Plaintiffs' and Ameriben's respective rights and obligations under the Plan.

Indeed, Plaintiffs allege that Ameriben had a "Privacy Policy" that "became part of the agreement for services" (i.e., the ERISA plan), in which Ameriben "commit[ted] to protecting the privacy and security of its members' sensitive personal information." (Dkt. 1, ¶¶ 159–60.) Thus, interpretation of the Plan forms an "essential part" of Plaintiffs' privacy-based claims, and Ameriben's alleged liability "exists *only* due to its administration" of the Plan. *Nielsen v. Unum Life Ins. Co. of Am.*, 58 F. Supp. 3d 1152, 1162 (W.D. Wash. 2014) (emphasis added).

**III. Plaintiffs' tort claims are barred by the economic loss rule.**

Idaho's economic loss doctrine bars Plaintiffs' tort claims because they allege purely economic losses stemming from an economic transaction. *Brian and Christie, Inc. v. Leishman Elec., Inc.*, 244 P.3d 166, 172 (Idaho 2010). Courts routinely dismiss tort claims in data breach cases for this very reason. *E.g.*, *Gardner v. Walmart Inc.*, No. 20-cv-04618, 2021 WL 2520103, at *9 (N.D. Cal. Mar. 5, 2021); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,

996 F. Supp. 2d 942, 973 (S.D. Cal. 2014).

Defendants are not trying to "have it both ways," as Plaintiffs contend. (*Cf*. Dkt. 33, p. 14.) While Defendants dispute that Plaintiffs have alleged any express or implied contract related specifically to data privacy protection ***that Defendants have breached***, the Plaintiffs ***are*** a party to a contract governing the services at issue: the Plan. Plaintiffs have chosen to disclaim any reliance on the Plan, either because it lacks the protections they desire or because they seek to avoid ERISA preemption. In either event, under the economic loss doctrine, the terms of the Plan are where Plaintiffs' rights are defined.

Plaintiffs expressly plead they were denied the benefit of their bargain, which confirms the economic loss doctrine applies. (Dkt. 1, ¶ 19.) That Plaintiffs did not obtain the contractual guarantees they assert merely reflects the parties' contractual allocation of risk, and Ameriben's non-assumption of that risk, not the inapplicability of the doctrine.

Nor are the damages Plaintiffs have alleged non-economic losses, as they contend. Plaintiffs cite no Idaho authority on this point, instead relying on a handful of California federal district court cases. (*Cf.* Dkt. 33, p. 14.) But California state courts in data breach cases have disagreed, and "reject[ed] [Plaintiffs'] contention that their asserted lost-time damages are non-economic damages …." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 536 (Cal. App. 2022). The greater weight of federal decisions in California agree on this point. *Gardner*, 2021 WL 2520103, at *9; *In re Sony Gaming Networks*, 996 F. Supp. 2d at 973. As do other jurisdictions. (Dkt. 24-1, pp. 9–10 (citing cases).)

Plaintiffs' allegations about emotional distress do not change the result, because such damages are not even recoverable under Idaho law. "In order to recover damages for emotional distress, the well-established law in Idaho clearly requires that emotional distress be accompanied

by physical injury or physical manifestations of injury." *Brown v. Matthews Mortuary, Inc.*, 801 P.2d 37, 42 (Idaho 1990). Here, it is not.

Nor can Plaintiffs rely on Idaho's special relationship exception, the application of which is "extraordinarily rare," *Lafky Properties, LLC v. Global Credit Union*, No. 1:19-cv-00413-DCN, 2020 WL 4736296, at *5 (D. Idaho Aug. 14, 2020), and limited to "professional[s] . . . [who] perform[] personal services," such as insurance agents, attorneys, architects, engineers, and physicians. *Millenkamp*, 391 F. Supp. 2d at 878–79. Plaintiffs do not allege facts that would implicate this exception, nor could they.

Instead, Plaintiffs rely on vague language in *Oswold v. Costco*, 473 P.3d 809, 819 (Idaho 2020), about a defendant's superior "control or knowledge about the risk." But *Oswold* is neither a data breach case nor an economic loss doctrine case. *Oswold* addresses a premises owner's duty to protect against third-party drivers' negligence (specifically in the design of parking lots), which has no application here. Plaintiffs' tort claims should be dismissed.

**IV. Plaintiffs' negligence claim fails for lack of duty.**

Plaintiffs still cite no Idaho authority recognizing a common-law duty to protect data, an omission that precludes their negligence claim. "There is, in general, no common law duty to protect the confidential information of others." *Barnett v. E:Space Labs LLC*, No. 6:18-cv-00419-MC, 2018 WL 3364660, at *3 (D. Or. July 10, 2018). Plaintiffs' general arguments about foreseeability are not enough to create a new negligence claim.

Nor do Plaintiffs even address that the Idaho data legislation, which vests sole enforcement authority in the government, weighs against the recognition of a novel common-law data protection duty. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 637 (7th Cir. 2007); *see also In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1168 (D. Minn. 2014) (Idaho statute

has "no provision for any . . . enforcement action" other than by regulators).

## V. Plaintiffs' negligence *per se* claim should be dismissed.

Plaintiffs' Response focuses on distinguishing between a private statutory right of action and a claim for negligence *per se* but fails to address why the statutes they rely on—principally, the FTC Act—do not satisfy Idaho law's requirements for a negligence *per se* claim. *See O'Guin v. Bingham Cty.*, 122 P.3d 308, 311 (Idaho 2005). Specifically, the statute must "clearly define the required standard of conduct," *id.*, and numerous courts have recognized that "[w]hile the FTC and other courts have ***interpreted*** [the FTC Act's] terms to apply to data security requirements, the statute's ***actual terms*** do not lay out positive, objective standards that, if violated, could give the standard for a negligence per se claim . . . ." *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2020 WL 3577341, at *6–7 (N.D. Ohio July 1, 2020) (emphasis added).

Plaintiffs rely solely on their ***allegations*** about the duties imposed by the FTC Act concerning data privacy. (Dkt. 33, p. 19.) But the Court should examine the ***statute itself***, not the spin Plaintiffs place on the statute in their Complaint. *Id*. Because Plaintiffs do not identify any provisions in the FTC Act that set such objective standards for data protection, their negligence *per se* claim fails.

Similarly, Plaintiffs have not alleged they are in the class the Act was intended to benefit. Courts have regularly recognized the Act did not intend to confer enforceable rights on individual consumers, but instead to empower government regulators to benefit the public generally. *E.g.*, *In re SuperValu, Inc.*, 925 F.3d 955, 963 (8th Cir. 2019). This claim fails.

## VI. Plaintiffs fail to state a claim for breach of express contract.

Plaintiffs' express contract claims fails, initially, for the simple reason that Plaintiffs have failed to even identify any express contractual provision they allege has been breached. Plaintiffs

simply refer to a "Privacy Policy," without attaching or specifically identifying it. Plaintiffs do not dispute – nor could they – that the "Privacy" statement on Ameriben's website does not contain any binding promises about handling of member data. That statement merely discusses use of browsing and IP data obtained from visitors to the website. *See* https://ameriben.com/Privacy#:~:text=We%20do%20not%20sell%2C%20license,required%20or%20permitted%20by%20law.

Plaintiffs note courts have recognized that other companies' privacy policies created enforceable contracts, but that determination depends on what the actual terms of the privacy policies at issue in those cases. Conversely, where the actual contents of a particular privacy policy do not contain binding promises, courts have rejected such claims. *E.g.*, *Pena v. Brit. Airways, PLC*, 849 F. App'x 13, 15 (2d Cir. 2021); *In re Premera Blue Cross Data Security Breach Litig.*, 198 F. Supp. 3d 1183, 1197–98 (D. Ore. 2016).

Plaintiffs point to no language in the webpage Privacy statement or any other express contract that evinces any promise about handling of member data that Defendant has breached. The bare fact that there is a page on Ameriben's website labeled "Privacy," without more, cannot support a breach of express contract claim. That is ***all*** Plaintiffs have alleged.

**VII. Plaintiffs fail to state a claim for breach of implied contract.**

Plaintiffs' implied contract claim also fails because they have not alleged a mutual intent to contract, or what specific implied promises were made and breached. Plaintiffs rely solely on their allegation about their ***own*** expectations to maintain the privacy of their information, (Pls. Resp. at 17), but do not allege any statements or conduct ***by Defendant*** evincing an intent to contract. [U]nilateral intent is not enough to make a contract binding." *Read v. McKennan Hosp.*, 610 N.W.2d 782, 786–87 (S.D. 2000) (quotation omitted). Mutual intent is required. *Fed. Nat'l*

*Mortg. Ass'n v. Hafer*, 351 P.3d 622, 629 (Idaho 2015). Also, the parties have an express contract governing the services at issue: the Plan. Thus, Plaintiff cannot allege an implied contract to vary the terms of that agreement. *Jorgensen v. Coppedge*, 181 P.3d 450, 454 (Idaho 2008).

**VIII. Plaintiffs' claim for breach of fiduciary duty should be dismissed.**

Plaintiffs cite no authority supporting a breach of fiduciary duty claim in a data breach case like this. A fiduciary duty requires the defendant to have agreed or undertaken to act in the best interest of the plaintiff and to place those interests before its own. A contractual relationship is not enough. *City of Meridian, an Idaho Mun. Corp. v. Petra Inc.*, 299 P.3d 232, 249 (Idaho 2013). The sole basis identified by Plaintiff is Ameriben's after-the-fact statement in its data breach notice that Plaintiffs should contact Ameriben if anything in their benefits information "doesn't look right." (Pls. Resp. at 23.) That does not establish a fiduciary duty.

**IX. Plaintiffs' unjust-enrichment claim fails.**

Plaintiffs' Response does not address the flaws in their unjust enrichment claim. The lost time and emotional distress damages they claim are not for restitution of any amounts by which Ameriben was enriched, which are the only recoverable damages for unjust enrichment. They argue Ameriben was "enriched" by receiving their data, but they are not seeking to have their data returned, so this does not support an unjust enrichment claim. *Barry v. Pacific W. Constr., Inc.*, 103 P.3d 440, 447 (Idaho 2004). This claim also fails.

**X. Plaintiffs fail to state a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).**

Plaintiffs' FDUTPA claim fails because (1) they have alleged no conduct, and no harm, occurring in Florida; and (2) they have failed to allege actual damages. Plaintiffs ignore well-settled Florida authority holding that there must be *some* direct connection to Florida to sustain a claim, besides the mere residence of the plaintiff. *Toretto v. Donnelley Fin. Solutions., Inc.*, 583 F.

Supp. 3d 570, 606 (S.D.N.Y. 2022) (plaintiff "must plausibly allege that at least some improper acts occurred in Florida"); *Hakim-Daccach v. Knauf Int'l GmbH*, No. 17-20495-Civ-Scola, 2017 WL 5634629, at *7 (S.D. Fla. Nov. 22, 2017) ("The fact that many of the complained of improper acts happen to be indirectly associated with bank accounts in Miami is not enough."). Where, as here, plaintiffs fail to allege *any* acts occurring in Florida, their FDUTPA claims must be dismissed. *Hakim-Daccach,* 2017 WL 5634629, at *7.

Moreover, Plaintiffs' Response does not even address the ***other*** fatal flaw in their FDUTPA claim. The FDUTPA "entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages." *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1212 (S.D. Fla. 2022). Plaintiffs' claims for lost time, emotional distress, and credit monitoring here are solely for consequential damages not recoverable under the FDUTPA. *See In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d at 1212–13 (claims for "diminution in value of PHI and PII" and "future risk of identity theft and emotional distress" not maintainable under FDUTPA); *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, 2020 WL 691848, at *13 (M.D. Fla. Jan. 27, 2020) (claims for "unauthorized charges, lost time" and diminished value of goods did not state claim under the FDUTPA).

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Complaint should be dismissed, with prejudice.

DATED: January 12, 2024

STOEL RIVES LLP

*/s/ Nicole C. Hancock*
Nicole C. Hancock

FROST BROWN TODD LLP

Kandi Kilkelly Hidde, (PHV)
Darren A. Craig, (PHV)

Attorneys for Defendant IEC Group Inc., d/b/a Ameriben

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2024, I served a copy of the foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

| | |
|---|---|
| Bonner C. Walsh | *bonner@walshpllc.com* |
| Marc E. Dann | *mdann@dannlaw.com* |
| Brian D. Flick | *bflick@dannlaw.com* |
| Marita I. Ramirez | *mramirez@dannlaw.com* |
| Thomas A. Zimmerman, Jr. | *tom@attorneyzim.com* |

/s/ *Nicole C. Hancock*
Nicole C. Hancock